UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRIAN JOHNSON,

                      Plaintiff,

v.

MARY E. ANDERSON et al.,

                      Defendants.

_____/

Case No. 1:22-cv-1161

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim against Defendants Hoover, Wilkinson, and Steward. The Court will dismiss Plaintiff's state law claims against Defendants Hoover, Wilkinson, and Steward without prejudice because the Court declines to exercise supplemental jurisdiction over them. Plaintiff's Eighth Amendment and supplemental state law claims against Defendant Anderson remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Registered Nurse Mary E.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Anderson, Physician Assistant Barbara Hoover, Healthcare Unit Manager Michael Wilkinson, "Active Warden" Darrell Steward, and Corizon Health Care (also named as "MDOC Corizon Health Care Service Provider" and "Corizon Health MDOC").[2]

Plaintiff alleges that, on November 17, 2020, at 7:00 a.m., Plaintiff slipped while trying to get down from his top bunk, injuring his back. (Compl., ECF No. 1, PageID.4.) Plaintiff reports that he could barely stand or walk. (*Id.*) Plaintiff's roommate reported the incident to non-party Officers Mackeeken and Miller, who then called healthcare and requested a wheelchair. (*Id.*) At 7:30 a.m., Plaintiff received a wheelchair and was taken to healthcare. (*Id.*) Plaintiff waited there "in pain" for nearly two hours. (*Id.*)

At 9:15 a.m., Defendant Anderson told Plaintiff, "I'm sending you back to your unit because we have a[ lot] going on right now at health care but we will call you back over later when we get around to it!" (*Id.*) Plaintiff's roommate wheeled him back to his unit. (*Id.*)

At 9:30 p.m., while still experiencing pain and unable to walk, Plaintiff had his roommate wheel him to the officers' station. (*Id.*) Plaintiff explained "[his] situation" to non-party Officer Zane and asked Officer Zane to call healthcare, which he did. (*Id.*) Plaintiff then spoke with non-party Nurse Poulin, explaining his pain and the events that took place at healthcare earlier that day. (*Id.*) Nurse Poulin responded that she had been unaware of the earlier events but would place Plaintiff on the emergency healthcare list for the following day, November 18, 2020. (*Id.*, PageID.5.) Plaintiff filed a grievance against "MDOC Health Care Providers and Nurse Anderson

---

[2] The Court notes that Tehum Care Services, Inc. d/b/a Corizon Health, Inc. has filed a petition in Bankruptcy, and an automatic stay has been entered in accordance with the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101, *et seq*. *See In re Tehum Care Services, Inc.*, Case No. 23-90086 (Bankr. S.D. Tex.). Accordingly, this civil action against Corizon Health, Inc. (presently named as Corizon Health Care) is automatically stayed as to the debtor until the Bankruptcy proceedings in question are terminated or the stay is lifted. 11 U.S.C. § 362(c). The Court will not address Plaintiff's claims against Corizon Health Care on screening.

for denying [Plaintiff] emergency medical assistance." (*Id.*; ECF No. 1-2, PageID.26.) Plaintiff did not receive any medical examination or attention on November 17, 2020. (ECF No. 1, PageID.4.)

On the afternoon of November 18, 2020, Plaintiff was called to healthcare where Plaintiff's vitals were taken, and Plaintiff was seen by non-party Nurse Poulin. (ECF No. 1-2, PageID.18–20.) Following Nurse Poulin's evaluation, Defendant Hoover, "Plaintiff's regular health care provider" (ECF No. 1, PageID.5), ordered that Plaintiff be provided a pain injection and a medical accommodation of "bottom bunk temporarily for 2 weeks; stop 12/3/20" and "crutches for 2 weeks; stop 12/3/20." (*Id.*; ECF No. 1-2, PageID.15, 18–20.) Nurse Poulin also provided Plaintiff with samples of ibuprofen to use as needed. (ECF No. 1-2, PageID.19.) Plaintiff was scheduled to return for a visit on December 2, 2020. (*Id.*, PageID.20.)

Plaintiff was seen by Nurse Poulin for a follow-up visit related to Plaintiff's pain on November 20, 2020. (*Id.*, PageID.21.) On November 23, 2020, Plaintiff's medical accommodations were amended to also include a "lay in" restriction until December 3, 2020. (*Id.*, PageID.16.)

Defendant Hoover again evaluated Plaintiff on November 24, 2020. (*Id.*, PageID.22–23.) Plaintiff reported that he was in pain but denied weakness. (*Id.*, PageID.22.) Defendant Hoover provided Plaintiff with another injection for pain and noted that Plaintiff was already scheduled for an x-ray. (*Id.*, PageID.23.)

On December 2, 2020, Plaintiff was seen by non-party Nurse Korson for a follow-up visit. (*Id.*, PageID.24.) Plaintiff was encouraged to participate in his care and instructed that he may contact healthcare as needed. (*Id.*)

Plaintiff was again injured on December 7, 2020, when he fell on the stairs while trying to walk down with his "crutches and [c]ane." (ECF No. 1, PageID.6.) Plaintiff was examined by non-party Healthcare Provider Klimowicz (ECF No. 1-5, PageID.48), and transported to the hospital via ambulance (ECF No. 1, PageID.6). Plaintiff's medical records from his hospital visit reveal that Plaintiff was diagnosed with musculoskeletal pain; however, diagnostic tests did not reveal any acute findings related to Plaintiff's fall. (ECF No. 1-6, PageID.59–60.)

When Plaintiff returned to MCF on December 7, 2020, he was seen by non-party Nurse Beaumont. (ECF No. 1-5, PageID.51.) Nurse Beaumont directed Plaintiff to take ibuprofen/ Tylenol as needed and educated Plaintiff on using a warm compress and stretching. (*Id.*) Defendant Hoover examined Plaintiff later that day. (*Id.*, PageID.52.) Defendant Hoover ordered an electromyography (EMG), gave Plaintiff a short detail for a wheelchair to be used for distance, and changed Plaintiff's medical accommodations to allow for a four-prong cane to help with stability. (*Id.*, PageID.53.)

On December 20, 2020, Plaintiff inquired about the status of his EMG and requested something different for pain. (*Id.*, PageID.54.) Defendant Anderson responded that same day, informing Plaintiff that the EMG has been requested and approved, that Plaintiff was scheduled to see nursing the following week and could discuss his concerns, and that Plaintiff could purchase pain medication from the store. (*Id.*, PageID.54.) Defendant Anderson also instructed Plaintiff on other measures that Plaintiff could use to alleviate pain. (*Id.*)

On February 22, 2021, Plaintiff was seen by outside non-party Doctor Adams for a follow-up visit and the previously ordered EMG. (ECF No. 1-7, PageID.70.) At that time, Plaintiff was diagnosed with chronic lumbosacral radiculopathy. (*Id.*, PageID.73–74.)

6

On April 15, 2021, MCF authorized Plaintiff to visit outside non-party "HFA Neurosurgery – Dr. Basheer." (ECF No. 1-8, PageID.75.) Plaintiff's visit with Dr. Basheer took place on June 21, 2021, at which time Dr. Basheer diagnosed Plaintiff as having degenerative changes to his spine and recommended surgery. (*Id.*, PageID.79.) Plaintiff claims that, while awaiting surgery, Plaintiff experienced immobility and constant pain. (ECF No. 1, PageID.6.)

Dr. Basheer performed the recommended surgery on October 7, 2021, and Plaintiff was discharged from the hospital on October 11, 2021. (ECF No. 1-9, PageID.81–87.) On October 12, 2021, Plaintiff was seen for an initial physical therapy evaluation with non-party Physical Therapist Weaver. (ECF No. 1-11, PageID.120.)

On October 22, 2021, Plaintiff was seen by outside non-party Nurse Hall for a two-week follow-up visit. (ECF No. 1-12, PageID.123.) At that time, Nurse Hall noted that Plaintiff was "doing well post op" and that Plaintiff's pain was well-controlled. (*Id.*)

On October 26, 2021, Plaintiff was again seen by Physical Therapist Weaver. (ECF No. 1-13, PageID.126–27.) During his visit with Physical Therapist Weaver, Plaintiff reported that he was performing all of his own activities of daily living, that his pain was better, that he was happy with his progress, and that he wished to be discharged back to MCF. (*Id.*, PageID.126.) Physical Therapist Weaver discharged Plaintiff from skilled physical therapy. (*Id.*, PageID.127.) Plaintiff claims that he is currently disabled following surgery. (ECF No. 1, PageID.6.)

Plaintiff brings claims of negligence and deliberate indifference against Defendants Anderson and Corizon Health Care for denying Plaintiff emergency medical assistance on November 17, 2020, and for failing to follow applicable MDOC policies related to the provision of "necessary medical assistance in instances of injury." (*Id.*, PageID.5.) Plaintiff brings similar claims of negligence and deliberate indifference against Defendants Hoover and Corizon Health

Care for failing to "accommodate [Plaintiff] with a special accommodation Ground Floor Room, No Stairs, No Steps Medical Detail" following Plaintiff's November 17, 2020, injury, which Plaintiff claims led to Plaintiff's December 7, 2020, fall. (*Id.*, PageID.6–7.) Plaintiff contends that this also violated MDOC policy. (*Id.*, PageID.7.) With respect to Defendants Wilkinson and Steward, Plaintiff alleges that Defendants Wilkinson and Steward were negligent and deliberately indifferent in failing to supervise health care staff and ensure that MDOC policies were followed. (*Id.*, PageID.8, 10.) And finally, Plaintiff claims that Defendant Steward violated state safety code in not having step ladders mounted on beds or walls to allow prisoners to safely climb down from top bunks. (*Id*., PageID.10.) Plaintiff states that step ladders were eventually put in place in October of 2022. (*Id.*)

Plaintiff seeks punitive damages in the amount of $500,000. (*Id.*, PageID.11.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Eighth Amendment Claims**

Plaintiff brings claims of Eighth Amendment deliberate indifference against all Defendants related to Plaintiff's November 17, 2020 and December 7, 2020 injuries.

In keeping with the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment, U.S. Const. amend. VIII, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical

9

care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's needs for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately" *Blackmore*, 390 F.3d at 898, or where the claim is based in part on an unreasonable delay in treatment, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay

in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component of the Eighth Amendment's deliberate indifference standard requires an inmate to plead facts that would demonstrate that that the prison official had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105.

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotation marks omitted). Thus, differences in judgment between an inmate and the medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020).

11

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 604-05 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

### 1.      Claims Against Defendants Wilkinson and Steward

Plaintiff seeks to hold Defendants Wilkinson and Steward liable for their respective supervisory positions as Health Care Unit Manager and Active Warden, claiming that Defendants Wilkinson and Steward were deliberately indifferent in failing to supervise healthcare staff and ensure that MDOC policies were followed. (ECF No. 1, PageID.8, 10.) However, government officials such as these may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter,* 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

12

Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff alleges in a conclusory fashion that Defendants Wilkinson and Steward failed to supervise their subordinates; however, conclusory allegations of supervisory liability without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege any facts that would indicate that Defendants Wilkinson and Steward were personally aware of the circumstances surrounding Plaintiff's injuries and medical care at the time that the care was alleged to have occurred, let alone facts that would plausibly suggest that Defendants Wilkinson and Steward encouraged or condoned the conduct of

their subordinates, or authorized, approved, or knowingly acquiesced in that conduct such that it could be said that these Defendants caused a violation of Plaintiff's constitutional rights.

The documents attached to Plaintiff's complaint indicate only that Defendant Wilkinson denied Plaintiff's November 17, 2020, grievance (ECF No. 1-3, PageID.26, 29), and that Defendant Steward upheld the rejection of Plaintiff's January 12, 2021, grievance (ECF No. 1-4, PageID.41). As discussed above, the denial or rejection of a grievance alone is insufficient to create liability under Section 1983. *See Shehee*, 199 F.3d at 300. Plaintiff fails to provide the Court with any well-pleaded factual allegations that would give rise to a claim of deliberate indifference against Defendant Wilkinson or Defendant Steward. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims against these Defendants.

### 2. Defendant Anderson

Plaintiff alleges that Defendant Anderson was deliberately indifferent to Plaintiff's serious back pain immediately following Plaintiff's fall on November 17, 2020. Plaintiff alleges that he arrived to healthcare in pain and in a wheelchair, and sat for nearly two hours before Defendant Anderson sent Plaintiff back to the unit in a wheelchair without providing Plaintiff with a medical examination or any medical assistance. (ECF No. 1, PageID.4, 5.) Plaintiff alleges that he was not seen by healthcare until the following day, November 18, 2020. (*Id.*) Although Plaintiff has by no means proven deliberate indifference by Defendant Anderson, accepting Plaintiff's allegations as true and viewed indulgently as is required at this stage, Plaintiff's Eighth Amendment claim against Defendant Anderson will not be dismissed on screening.

### 3. Defendant Hoover

Plaintiff claims that Defendant Hoover was deliberately indifferent to Plaintiff's medical condition by failing to provide Plaintiff with a special accommodation of "Ground Floor Room, No Stairs, No Steps . . . after knowing and being aware that [Plaintiff] was hurt and in pain with a

back injury and could not walk from a previous fall that took place on 11/17/20." (ECF No. 1, PageID.7.)

The Court assumes without deciding that Plaintiff's back pain represents an objectively serious medical condition. However, with respect to the subjective prong, this is not a situation in which Defendant Hoover's treatment of Plaintiff was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 605.

Plaintiff's complaint and the documents attached thereto indicate that, on November 18, 2020, Defendant Hoover was informed of Plaintiff's condition and gave orders to provide Plaintiff with a pain injection and an accommodation of "bottom bunk temporarily for 2 weeks; stop 12/3/20" and "crutches for 2 weeks; stop 12/3/20." (ECF No. 1, PageID.5; ECF No. 1-2, PageID.15, 18–20.) Defendant Hoover again evaluated Plaintiff on November 24, 2020, at which time Plaintiff denied weakness. (*Id.*, PageID.22.) Defendant Hoover provided Plaintiff with another injection for pain. (*Id.*) While Plaintiff may disagree with Defendant Hoover's course of treatment, particularly now with the 20/20 vision of hindsight, differences in judgment such as these do not state a claim for deliberate indifference. *See Darrah*, 865 F.3d at 372; *Briggs*, 801 F. App'x at 959. Plaintiff has not provided this Court with any facts that would plausibly suggest that Defendant Hoover acted wantonly, without regard for Plaintiff's pain, or that Defendant Hoover was aware of but disregarded any substantial risk to Plaintiff's health or safety. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Hoover.

### B.  Negligence, Violation of MDOC Policy, and Violation of the State Safety Code

Plaintiff contends that Defendants were negligent, violated and/or failed to uphold MDOC policies, and that Defendant Steward violated the state safety code. However, claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not

provide redress for a violation of a state law or MDOC policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). And negligence is not actionable under Section 1983, because even gross negligence is not "arbitrary in the constitutional sense." *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 34 F.3d 345, 351 (6th Cir. 1994) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)). The Court has therefore construed Plaintiff's claims of negligence, violation of MDOC policy, and violation of the state safety code as claims under Michigan state law.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims against Defendants Hoover, Wilkinson, and Steward will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Therefore, Plaintiff's state law claims against Defendants Hoover, Wilkinson, and Steward will be dismissed without prejudice to Plaintiff's ability to bring that claim in the state courts.

As to Defendant Anderson, because Plaintiff continues to have a pending federal claim against her, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Anderson.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Hoover, Wilkinson, and Steward will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against Defendants Hoover, Wilkinson, and Steward without prejudice because the Court declines to exercise supplemental jurisdiction over them. Plaintiff's Eighth Amendment and supplemental state law claims against Defendant Anderson remain in the case.

An order consistent with this opinion will be entered.


Dated:   April 24, 2023                              /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     United States Magistrate Judge