UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN JOHNSON #212417,

    Plaintiff,    Hon. Jane M. Beckering

v.    Case No. 1:22-cv-1161

MARY ANDERSON, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Brian Johnson, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF), filed a complaint pursuant to 42 U.S.C. § 1983 on December 7, 2022, against several Defendants based on events that occurred at MCF in November 2020. Plaintiff's sole remaining federal claim in this action is his Eighth Amendment deliberate indifference claim against Defendant Mary Anderson, R.N. (ECF No. 6 at PageID.159.)

    Presently before me is Defendant Anderson's Motion for Summary Judgment. (ECF No. 45.) Plaintiff has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion and dismiss Plaintiff's Eighth Amendment claim against Anderson

---

[1] Although Plaintiff is proceeding pro se, he is still expected to comply with the applicable court rules. *See Strohmeyer v. Chase Bank USA, N.A.*, No. 3:17-cv-443, 2018 WL 2669991, at *2 (E.D. Tenn. June 4, 2018) ("It is correct that pro se parties are expected to comply with the rules of procedure just as parties represented by counsel must do."); *Jones v. Graley*, No. 2:05-cv-773, 2006 WL 1697637, at *1 (S.D. Ohio June 20, 2006) (although federal courts have treated pro se litigants more leniently, they "are still expected to comply with the procedural rules of the court").

with prejudice. I further recommend that the Court dismiss Plaintiff's state-law claims without prejudice.

## I. Background

Plaintiff alleges that on November 17, 2020, at 7:00 a.m., he slipped while trying to get down from his top bunk, injuring his back. (ECF No. 1 at PageID.4.) Plaintiff's cellmate reported the incident to non-party Officers Mackeeken and Miller, who called healthcare and requested a wheelchair. (*Id.*) At 7:30 a.m., Plaintiff received a wheelchair and was taken to healthcare, where he waited "in pain" for nearly two hours. (*Id.*)

Plaintiff has a history of back pain during his incarceration with the MDOC. In 2013, Plaintiff was seen in healthcare for sharp aching mid-back pain. (ECF No. 46-4 at PageID.399.) When asked how long he had been in pain, Plaintiff said in a loud voice, "for a minute and this ain't no Motrin back pain." The visit was terminated when Plaintiff became verbally aggressive with the nurse. (*Id.* at PageID.400.) During that year, Plaintiff received a chronic diagnosis of lumbago, which continued throughout his years with the MDOC. (*Id.* at PageID.398, 402–10.)

On November 17, 2020, after Plaintiff fell from his bunk, he was taken to healthcare in a wheelchair, even though he had not received a callout. (*Id.* at PageID.412; ECF No. 46-6 at PageID.480.) The on-duty healthcare officer asked Defendant Anderson to speak with Plaintiff, who was in the waiting room and had refused a direct order to return to his unit. (ECF No. 46-4 at PageID.412; ECF No. 46-6 at PageID.479.) At the time, Defendant Anderson was busy seeing other patients who had scheduled appointments, and no other healthcare providers were available to see Plaintiff. (*Id.* at PageID.479–80.) Defendant Anderson asked Plaintiff if he had an appointment or a callout. Plaintiff refused to answer her question, became extremely angry and hostile toward Anderson, and demanded to be seen right away. (*Id.* at PageID.480.) Defendant Anderson stepped out of the waiting room to determine whether any healthcare staff had taken a

call from or about Plaintiff regarding his back pain. After no staff member reported speaking with Plaintiff, Anderson returned to the waiting room, where she attempted to provide Plaintiff basic education to help alleviate his back pain until he could be seen in healthcare, but Plaintiff continued to yell and shout expletives at Anderson and left the building. (ECF No. 46-4 at PageID.412.) Before Plaintiff left, Anderson told him to have his unit officer call healthcare or to send a kite so that an appointment could be scheduled. (ECF No. 46-6 at PageID.480.) Anderson had no other contact with Plaintiff. (ECF No. 46-3 at PageID.390–91.)

Plaintiff returned to his unit, took some pain medication, and tried to stay comfortable. (*Id.* at PageID.374–75.) Plaintiff did not send a kite to healthcare later that day or evening, but later that night, he asked his unit officer to call healthcare for him. (*Id.* at PageID.375.) Another nurse took the call, spoke to Plaintiff about his pain, and told him that he would be monitored. (ECF No. 46-4 at PageID.413.) The following day, Plaintiff was called out to healthcare and PA Hoover ordered a Toradol injection and a lumbar x-ray and issued him a detail for crutches and a bottom bunk. (*Id.* at PageID.415.) The Toradol injection did not provide Plaintiff relief, and his pain stayed at about the same level it had been directly after his fall and at the time he saw Defendant Anderson. (ECF No. 46-3 at PageID.375–78.)

On December 7, 2020, before Plaintiff had the x-ray PA Hoover had ordered, he fell again and "was damn near like paralyzed." (*Id.* at PageID.381.) Plaintiff was taken to a local emergency department and underwent diagnostic imaging, which showed no fracture but indicated "degenerative disc disease at L5-S1" and "mild multilevel degenerative changes of the spine." (*Id.* at PageID.382; ECF No. 46-4 at PageID.430–41.) Plaintiff was discharged with instructions for conservative care. Over the following year, Plaintiff had several follow-up visits with MDOC healthcare and with the team of doctors he had seen at Henry Ford Hospital. (*Id.* at PageID.443–

3

457.) Plaintiff ultimately underwent back surgery in October 2021. (ECF No. 46-5 at PageID.463–64.) Plaintiff found the surgery helpful, but he was injured at the hospital during his immediate post-surgery recovery, necessitating a second surgery in October 2024. (ECF No. 46-3 at PageID.383–88.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)).

## III. Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or

involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

Defendant Anderson contends that Plaintiff's claim fails because she lacked the requisite personal involvement in his medical treatment. Anderson's reliance on lack of personal involvement is misplaced. Although Defendant Anderson has presented proof that, as a nurse, she was not authorized to prescribe medications or issue treatment plans, Plaintiff alleges that she interacted with him on the morning of November 17, 2020 and denied him a medical examination or any medical assistance when she sent him back to his unit. That interaction satisfies the personal involvement requirement for a Section 1983 claim.

Anderson's arguments are persuasive, however, as to the merits of Plaintiff's deliberate indifference claim. Plaintiff fails to establish either component of his claim. As noted, a plaintiff may demonstrate that he had a serious medical need if his condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison*, 539 F.3d at 518. Plaintiff presents no evidence that a physician had mandated treatment for his back or that the need for treatment was so obvious that even a lay person would easily recognize the necessity for a doctor's attention. On the other hand, Anderson states in her affidavit that she asked Plaintiff a few basic questions about his back condition and determined that it was not an emergency. (ECF No. 46-6 at PageID.480.) She also attempted to provide him instructions to take over over-the-counter medication and ice

6

the painful areas to make himself comfortable until he could get an appointment to be seen by a medical provider, but he left abruptly. (*Id.*) Under the circumstances, Plaintiff's need for immediate medical care was non-obvious.

Therefore, Plaintiff is required to "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citations omitted). Generally, the required medical evidence must be in the form of expert testimony. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). Here, Plaintiff failed to present such evidence of the detrimental effect of the one-day delay in medical treatment, when he was seen by PA Hoover. Thus, Plaintiff fails to establish the objective component of his claim.

Plaintiff also fails to establish the subjective component. To do so, he "must present evidence from which a trier of fact could conclude 'that [Defendant Anderson] was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847). Although Plaintiff alleges that he told Defendant Anderson he was in pain, Defendant Anderson determined that Plaintiff's situation was non-emergent after obtaining some basic information from him. She also told him to have his unit officer contact healthcare to get a medical appointment scheduled. (ECF No. 46-6 at PageID.480.) Plaintiff fails to present evidence that Anderson was subjectively aware of a serious risk of harm to Plaintiff's health and ignored that risk by telling him to follow the required procedure. While Plaintiff believes that Defendant Anderson should have done something at the time she saw him—"she probably could have got me in, took my vitals, analyzed my . . . pain to see what was going on . . . [a]nd then probably . . . prescribed me . . . a stronger medication or something that could help" (ECF No. 46-3 at PageID.379)—Anderson was tied up with other

patients, Plaintiff did not have an appointment or a call out to be in healthcare at that time, and as a nurse, Anderson could not prescribe medications or issue treatment plans. (ECF No. 46-6 at PageID.480.) Therefore, Anderson acted reasonably under the circumstances, and Plaintiff's Eighth Amendment claim against Defendant Anderson fails.[2]

Finally, if the Court agrees with the foregoing recommendation to grant summary judgment on Plaintiff's Eighth Amendment claim, I recommend that it exercise its discretion to decline supplemental jurisdiction and dismiss Plaintiff's state-law claims against Defendant Anderson without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Generally, the Court should decline to hear state-law claims when all federal claims are dismissed before trial. *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.") (citing *Carnegie–Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Because no federal claims will remain, the state-law claims are properly dismissed.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **GRANT** Defendant's Motion for Summary Judgment (ECF No. 45) and dismiss Plaintiff's Eighth Amendment claim with prejudice. I further recommend that the Court dismiss Plaintiff's state-law claims without prejudice.

Dated: May 27, 2025

       /s/ Sally J. Berens
       SALLY J. BERENS
       U.S. Magistrate Judge

---

[2] Because I conclude that Plaintiff's Eighth Amendment rights were not violated, I find it unnecessary to address Defendant Anderson's qualified immunity argument.

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).